**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **SCHLUMBERGER TECHNOLOGY** | § | |
| **CORPORATION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 4:13-cv-01677** |
| **v.** | § | |
| | § | **JURY** |
| **NORDAQ ENERGY, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT NORDAQ ENERGY, INC.'S**
**<u>MOTION TO DISMISS OR TRANSFER</u>**

This case does not belong in Texas. It belongs in Alaska. Defendant NordAq has

its principal—and only—place of business in Alaska, and all of its eleven employees are

in Alaska. NordAq negotiated a Master Service Agreement (MSA) with plaintiff

Schlumberger to govern work done in Alaska. The MSA contains an Alaskan choice of

law provision and an Alaskan forum selection clause. Accordingly, NordAq files this

motion to dismiss, or alternatively, motion to transfer, based on:

A.  Lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules
    of Civil Procedure; or alternatively,

B.  Transfer or dismissal in accord with the MSA's mandatory forum selection
    clause pursuant to Rule 12(b)(3) and Sections 1404(a) and 1406, Title 28,
    United States Code.

In support of this motion, NordAq would respectfully show the Court the

following:

## FACTS

NordAq is a small, independent oil and gas company based in Anchorage, Alaska. Devine Aff., Ex. A, at ¶ 4.  It holds leases in the Kenai Peninsula of the Cook Inlet and Smith Bay on the North Slope.  *Id.* at ¶ 6.  All of NordAq's eleven employees are located in Alaska.  *Id.* at ¶ 5.

NordAq does not have continuing and systematic and substantial contacts with the State of Texas.  Devine Aff., Ex. A, at ¶ 7.

- NordAq is not a Texas corporation, nor is it a resident of Texas.

- NordAq does not—and is not required to—maintain a registered agent for service of process in Texas.

- NordAq does not—and is not required to—pay franchise or property taxes in Texas.

- NordAq does not conduct business, advertise, or commit torts in Texas.

- NordAq does not have any personal or real property in Texas.

- NordAq does not have any personnel in Texas.

*Id.*, Ex. A, at ¶¶ 7(a)-7(n).

NordAq engaged Schlumberger to provide drilling services for wells on NordAq's Alaskan leases.   Devine Aff., Ex. A, at ¶ 15.   NordAq negotiated—in Alaska—with Schlumberger's Alaska GeoMarket marketing manager in Alaska.   *Id.* at ¶¶ 12, 14. These negotiations culminated in a Master Service Agreement.   *See* MSA, Ex. A-1; Devine Aff., Ex. A, at ¶ 11.

The MSA includes an Alaska choice of law provision and an Alaskan forum selection clause:

> In those instances where the General Maritime Law does not apply, **the laws of the State of Alaska shall apply** and govern the validity, interpretation, and performance of this Agreement, the Work and any applicable Orders.  The Parties agree that the law of the selected jurisdiction shall apply exclusive of any principles of conflicts of laws that would require application of the substantive laws of another jurisdiction.  **Any suit or proceeding hereunder shall be brought exclusively in the state or federal courts located in Anchorage, Alaska.**  Each Party consents to the personal jurisdiction of the state and federal courts of Anchorage and waives any objection that such courts are an inconvenient forum or venue.

MSA, Ex. A-1, at 17, ¶ 20(E) (emphasis added).

Schlumberger did not attach the MSA to its petition.  *See* Petition, Ex. B.  Instead, Schlumberger provided copies of certain field tickets, service order contracts, and invoices.  *Id.* at Exs. 1-2 to the Petition.  Schlumberger also attached a copy of "general terms and conditions" from the back of its standard form job orders or tickets.  *Id.* at Ex. 3 to the Petition.

None of those papers control the parties' relationship.  In fact, Schlumberger specifically agreed the MSA would govern, and that terms and conditions of its job tickets would *not* apply:

> Contractor [Schlumberger] and Company [NordAq] agree that the terms and conditions set forth in this Agreement shall control and govern all Work agreed to be performed by Contractor for Company . . . .  In the event that Company issues any Order or other instrument whose terms supplement or are inconsistent with any of the terms or provisions of this Agreement, such terms shall be unenforceable against Contractor and Company, and the terms of this Agreement shall control.

> Company agrees to execute Contractor's usual field contracts and/or job tickets customarily required by Contractor in connection with the provision of Work hereunder, with the understanding on the part of both Parties that **irrespective of the terms and conditions of such orders or tickets, the terms and conditions of this Agreement shall prevail in determining the rights and liabilities of the Parties hereto**.

*Id.*, Ex. A-1, at 3, ¶ 2 (emphasis added).  *See also* Petition, Ex. B, at Ex. 1 to the Petition, Service Contract Nos. BJJ8-00137, CANI-00004, and C60P-00002 (acknowledging, because the parties had entered into an MSA, Schlumberger provided its well services "PURSUANT TO THE MASTER SERVICE AGREEMENT BETWEEN CUSTOMER AND SCHLUMBERGER").

Each and every field ticket, service contract receipt, service order contract, and invoice Schlumberger attached to its petition is dated after the July 10, 2012, effective date of the MSA.  *See* MSA, Ex. A-1, at 1; Ex. B, Petition, at Exs. 1 and 2.  Therefore, each and every field ticket, service contract receipt, service order contract, and invoice is governed by the terms of the MSA, including the MSA's choice of Alaskan law and choice of Alaskan forum provision.  MSA, Ex. A-1, at 17, ¶ 20(E).

## ARGUMENTS AND AUTHORITIES

A.    **The Exercise of Personal Jurisdiction over NordAq Does Not Satisfy the Due Process Clause of the Fourteenth Amendment.**

1.    **Plaintiff bears the burden of proof of personal jurisdiction.**

When a defendant files a motion to dismiss for lack of jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of demonstrating the court has personal jurisdiction over the defendant.  *Clemons v. WPRJ, LLC*, No. H-12-0334, 2013 U.S. Dist. LEXIS 10838, at *7 (S.D. Tex. Jan. 28, 2013).  The Court is not required to give any

weight to conclusory allegations, even if those allegations are uncontroverted.  *AllChem Performance Prods., Inc. v. Aqualine Warehouse, LLC*, 878 F. Supp. 2d 779, 785 (S.D. Tex. 2012).

A federal court sitting in diversity may exercise personal jurisdiction over a foreign defendant only if the forum state's long-arm statute applies and the Due Process Clause of the Fourteenth Amendment is satisfied.  *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012).[1]  The due process inquiry has two parts.  First, the defendant must have purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with Texas.  *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The requirement of purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'"  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).  Second, asserting jurisdiction over the defendant must not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe*, 326 U.S. at 316.

Minimum contacts can happen two ways, through a showing of either specific jurisdiction or general jurisdiction.  *See Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 & n.8 (1984).  We address each in turn.

---

[1]  Because the Texas long-arm statute is coextensive with the Due Process Clause, the question of personal jurisdiction is reduced to one of federal due process.  *Pervasive Software*, 688 F.3d at 220.

2.      **NordAq is Not Subject to Specific Jurisdiction in Texas.**

Specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (quotation omitted). The key inquiry in the specific jurisdiction analysis is whether there was "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). A court must examine the relationship between the nonresident defendant, the forum, and the litigation itself to determine if due process requirements are satisfied. *See Burger King Corp.*, 471 U.S. at 475; *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

The sole jurisdictional contact even mentioned by Schlumberger in its petition is a recitation NordAq contractually agreed to pay Schlumberger in Texas. Petition, Ex. B, at 2, ¶ 6. Neither entering into a contract with a Texas company nor agreeing to make payment in Texas is enough to justify jurisdiction. The Fifth Circuit "has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the exercise of specific personal jurisdiction over the nonresident defendant." *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004); *see also Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986). "Otherwise, jurisdiction could be exercised based only on the fortuity that one of the

parties happens to reside in the forum state." *Special Indus. Inc. v. Zamil Group Holding Co.*, No. 4:11-CV-3207, 2013 U.S. Dist. LEXIS 46518, at *26 (S.D. Tex. Mar. 29, 2013).

In *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026 (5th Cir. 1983), the Fifth Circuit addressed some of the same facts present in this case. Like NordAq, Alaska Mechanical was an Alaskan corporation that entered into a contract with a Texas resident. *Hydrokinetics*, 700 F.2d at 1028. The Hydrokinetics/Alaska Mechanical contract included an Alaska choice of law provision. *Id.* at 1029. And Alaska Mechanical agreed to mail payments to Texas. *Id.* at 1028. None of this—even when combined with additional jurisdictional contacts not present here, including the manufacture of goods in Texas by the plaintiff, Texas negotiations, and a Texas trip to "close" the deal—supported jurisdiction. *Id.* at 1029-30.

*Moncrief Oil International Inc. v. OAO Gazprom*, 481 F.3d 309 (5th Cir. 2007), is similarly instructive. Moncrief Oil specialized in oil and gas field projects. *Moncrief Oil*, 481 F.3d at 310. Among other things, Moncrief Oil agreed to provide technical expertise in support of the development of a Russian natural gas field. *Id.* at 310-11. Moncrief, like Schlumberger, was a Texas-based company. Also like Schlumberger, it was "an international company engaged in various projects around the world." *Id.* at 313. Moncrief had a Russian office; Schlumberger has an Alaskan office with which NordAq dealt. *Compare id. with* Devine Aff., Ex. A, at ¶¶ 12-15. And both Moncrief and Schlumberger entered into contracts with foreign defendants calling for the application of foreign law in a foreign forum. *Id.* This last fact was "perhaps most significant[]" to the Fifth Circuit. *Moncrief Oil*, 481 F.3d at 313. "The [Russian] arbitration clauses and

[Russian] choice of law clauses found" in the parties' contract "suggest that [defendant] meant for the undertaking to remain wholly Russian in nature." *Id.* There was simply no reason why the defendant in *Moncrief Oil* could expect to be haled into a Texas court. *Id.* There is no reason why—in the face of an MSA for services in Alaska, calling for the application of Alaskan law, and requiring suit in an Alaskan forum—NordAq should have had any different expectation.

Merely contracting with a Texas resident and making payment into Texas is no basis for jurisdiction over NordAq. The Court should dismiss plaintiff's claims for want of personal jurisdiction.

### 3.    NordAq is Not Subject to General Jurisdiction in Texas.

Plaintiff does not allege, and cannot prove, NordAq is subject to general jurisdiction in the State of Texas. General jurisdiction arises only if a defendant's contacts with the forum are so "substantial, continuous, and systematic" that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *Special Indus.*, 2013 U.S. Dist. LEXIS 46518, at *9 (citing *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 217 (5th Cir. 2000)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which **the corporation is fairly regarded as at home**." *Goodyear*, 131 S. Ct. at 2853-54 (emphasis added). "In other words, the contacts must be so substantial, continuous, and systematic 'as to render [a foreign corporation]' essentially at home in the forum State." *Goodyear*, 131 S. Ct. 2851; *see also Helicopteros Nacionales de*

*Columbia v.* 466 U.S. at 410, 416 (rejecting general jurisdiction over defendant that purchased 80% of its helicopter fleet from Texas, sent prospective pilots to Texas for training, and sent management and maintenance personnel to Texas for technical consultation); *Rosenberg Bros. & Co. v. Curtis Brown Co.,* 260 U.S. 516, 518 (1923) (holding that New York could not assert personal jurisdiction over an Oklahoma firm, even though that firm purchased in New York a "large part of the merchandise to be sold at its store in [Oklahoma].").

NordAq does not have continuing and systematic contacts with the State of Texas. Devine Aff., Ex. A, at ¶ 7.  It has no substantive presence in Texas.  *Id.*  It demonstrates none of the traditional hallmarks of general jurisdiction.  *Special Indus.*, 2013 U.S. Dist. LEXIS 46518, at *9.  NordAq is far from home.

NordAq's ownership of a separate, independent, indirect subsidiary in Texas does nothing to alter this general jurisdiction analysis.  Aquilonia Energy E&P, Inc. is a Texas corporation.  However, it did not participate in the transactions with Schlumberger and is not a signatory to the MSA.  Devine Aff., Ex. A, at ¶ 8.  Indeed, it has done no business at all in over two years.  *Id.*

In order to "fuse" NordAq and Aquilonia for purposes of jurisdiction, Aquilonia must be the alter ego of NordAq.  But courts do not set aside corporate separateness lightly.  "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003).  *See, e.g., First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611, 625 (1983) ("Separate legal personality has been described as 'an almost

indispensable aspect of the public corporation'"); *Commonwealth Gen'l Corp. v. York*, 177 S.W.3d 923, 925 (Tex. 2005) ("[S]eparate corporations are presumed to be distinct entities.").

The alter ego doctrine only "applies when there is such unity between the parent corporation and its subsidiary that the separateness of the two corporations has ceased." *Special Indus.*, 2013 U.S. Dist. LEXIS 46518, at *10 (quoting *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593 (5th Cir. 1999) (internal quotation marks omitted)). "[A] typical corporate relationship between a parent and subsidiary" is no evidence of alter ego. *Gardemal*, 186 F.3d at 593. There must be "proof of control by the parent over the internal business operations and affairs of the subsidiar[ies] such that it fuse[s them] for jurisdictional purposes." *Special Indus.*, 2013 U.S. Dist. LEXIS 46518, at *10 (quoting *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983)). In other words, "there must be evidence of complete domination by the parent." *Gardemal*, 186 F.3d at 593. NordAq has no such control. Devine Aff., Ex. A, at ¶ 9. NordAq and Aquilonia are separate companies, and Aquilonia's presence in Texas is irrelevant to an analysis of jurisdiction over NordAq.

NordAq is not at home in Texas, and therefore, is not subject to general jurisdiction. The Court should dismiss plaintiff's claims.

**4. Asserting jurisdiction over NordAq would offend traditional notions of fair play and substantial justice.**

Even if plaintiff could somehow demonstrate minimum contacts sufficient to justify specific or general jurisdiction over NordAq—which it cannot—the Court must

still find that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. Jurisdiction in this case would be neither fair nor just.

NordAq is a Delaware corporation with its principal and only place of business in Alaska. *See* Ex. A, Devine Aff., at ¶ 4. Plaintiff's claims against NordAq arise out of a drilling project located in Alaska. *Id.* at ¶¶ 6, 15. NordAq has no presence in Texas. *See id.* at ¶ 7. All of defendant's employees and records are located in Alaska. *Id.* at ¶¶ 5, 15. All of the parties' relevant acts took place in Alaska. *Id.* at ¶¶ 12-15. NordAq did not anticipate being haled into court in Texas and did not seek the protection of Texas law. *Id.* at ¶ 10.

In conducting its analysis, this Court must look at the interest of the State of Alaska "in the efficient judicial resolution of the dispute and the advancement of substantive policies." *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 377 (5th Cir. 1987) (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 115 (1987)). The State of Alaska, and not the State of Texas, has the only interest in the manner in which NordAq conducts its general affairs. *See id.* ("Kansas is the home of the defendant; it has an interest in the manner in which [defendant] Beech conducts its general affairs."). Dismissal for lack of jurisdiction is warranted.

**B.     In the Alternative, the Court Should Transfer this Case to Alaska.**

   **1.     The parties have already agreed Alaska courts should resolve this dispute.**

In the MSA, the parties agreed the law of Alaska shall govern, and the state and federal courts of Alaska shall adjudicate, their disputes.  MSA, Ex. A-1, at 17, ¶ 20(E). "[A] party seeking to bar enforcement of a forum selection clause bears a **heavy burden** of demonstrating that the forum selection clause is unreasonable under the circumstances." *Bancroft Life & Cas. ICC, Ltd. v. FFD Res. II, LLC*, 884 F. Supp. 2d 535, 548 (S.D. Tex. 2012) (citing *M/S Bremen v. Zapata Off-shore Co.*, 407 U.S. 1, 12-13 (1972)) (emphasis added).  Schlumberger can hardly argue an Alaska forum selection clause negotiated by its Alaska GeoMarket manager in a contract for the provision of services in Alaska for an Alaskan client is unreasonable.  *See* Devine Aff., Ex. A, at ¶¶ 12-15.  This should be the end of the analysis—the case should be dismissed or transferred to Alaska to effectuate the parties' contractual agreement.

   **2.     The Court should transfer this case to Alaska for convenience and in the interest of justice.**

The Fifth Circuit has recently held a court must conduct an analysis of the Section 1404(a) convenience factors when the parties designate a specific federal forum in a forum selection clause.  *In re Atl. Marine Constr. Co.*, 701 F.3d 736 (5th Cir. 2012), *cert. granted*, 133 S. Ct. 1748, 185 L. Ed. 2d 784 (U.S. Apr. 1, 2013) (No. 12-929).[2]  Transfer is both appropriate and necessary.

---

[2] *Atlantic Marine* adopts the minority view:  eight circuits give effect to a forum selection clause through a motion filed pursuant to Rule 12(b)(3) and Section 1406.  *Id.* at 746-47 (Haynes, J., concurring) (collecting cases).  The majority view makes sense: "the negotiation of a forum-

-12-

Alaska is a more convenient venue than Texas. The parties tacitly acknowledged this fact by selecting Alaska state and federal courts to adjudicate this dispute. "The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus." *Atl. Marine*, 701 F.3d at 742 n.24 (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Similarly—and unlike the parties in *Atlantic Marine*—NordAq and Schlumberger chose Alaska law to govern any disputes under the MSA. *Compare id.* at 740 ("While Atlantic Marine bargained for a choice of forum, it failed to obtain a choice of law provision.") *with* MSA, Ex. A-1, at 17, ¶ 20(E) ("the laws of the State of Alaska shall apply"). The familiarity of the forum with the law governing the case is a public interest factor in the convenience analysis. *Clemons*, 2013 U.S. Dist. LEXIS 10838, at *23 (quoting *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc)); *see also Sewing v. Stryker Corp.*, No. H-10-4818, 2012 U.S. Dist. LEXIS 117022, at *5 (S.D. Tex. Aug. 14, 2012) (noting forum's familiarity with California law favored transfer to the Northern District of California).

For purposes of the Section 1404(a) private interest factors, other than the citizenship of plaintiff—which is a worldwide corporation with an Alaska GeoMarket and, as of November 2012, 850 Alaska employees—"this case has no connection to the Southern District of Texas." *Sewing*, 2012 U.S. Dist. LEXIS 117022, at *2;

---

selection clause involves various economic decisions and often requires a party to make concessions in exchange for the assurance that potential litigation will occur in a predetermined venue." *Id.* at 748 (Haynes, J., concurring). The U.S. Supreme Court will hear oral argument in *Atlantic Marine* in October 2013.

Schlumberger—Alaska GeoMarket Region, Ex. C, at http://www.slb.com/ contact_us/geographical /nam/aka.aspx (last visited June 17, 2013); Tim Bradner, *Schlumberger's Alaska history dates back to first oil well*, ALASKA JOURNAL OF COMMERCE, Ex. D, http://www.alaskajournal.com/Alaska-Journal-of-Commerce/ November-Issue-3-2012/Schlumbergers-Alaska-history-dates-back-to-first-oil-well/.

All of NordAq's records related to plaintiff's work are in Alaska. *See* Devine Aff., Ex. A, at ¶ 15; *Black v. Toys R Us*, C.A. No. H-08-3315, 2009 U.S. Dist. LEXIS 126690, 2009 WL 7808955, at *2 (S.D. Tex. Apr. 21, 2009) ("While modern technology reduces the burden of out-of-state evidence, the burden remains."), *quoted in Sewing*, 2012 U.S. Dist. LEXIS 117022, at *2.  Furthermore, since all of NordAq's employees are in Alaska, and NordAq's primary contact point with Schlumberger is in Alaska, the cost of attendance for willing (or unwilling) witnesses supports transfer.  Devine Aff., Ex. A, at ¶¶ 5, 14; *Sewing*, 2012 U.S. Dist. LEXIS 117022, at *3.  In addition, because NordAq is raising its objections to jurisdiction and venue less than a month after receiving citation and prior to any discovery taking place, there are no practical problems with a transfer to Alaska making trial of the case more difficult or expensive.  *Sewing*, 2012 U.S. Dist. LEXIS 117022, at *3.

Public interest factors also show Alaska would be a more convenient forum.  First, administrative difficulties flowing from court congestion point toward venue in Alaska. *Id.* at *4.  In 2012, the Southern District of Texas had over ten times as many pending cases as did the District of Alaska.  Table C: U.S. District Courts—Civil Cases Commenced, Terminated, and Pending During the 12-Month Periods Ending March 31,

2011 and 2012, Ex. E, http://www.uscourts.gov/uscourts/Statistics/FederalJudicial CaseloadStatistics/2012/tables/C00Mar12.pdf, at 42-43.  Second, if any federal district has a localized interest in having this case decided at home, that district is the District of Alaska.  *Sewing*, 2012 U.S. Dist. LEXIS 117022, at *4.  Finally, as we note above, Alaska courts are well familiar with the laws of the State of Alaska.  *Id.* at *4-5.

This case should be dismissed or transferred in accord with the parties' contractual choice of forum and in light of convenience.  The Court should grant NordAq's motion.

## CONCLUSION

NordAq has no connection to Texas.  None of the facts or transactions underlying this case has any connection to Texas.  The parties have already chosen Alaska as the forum for litigation.  This case should be in Alaska.  Therefore, NordAq respectfully requests the Court dismiss this case, or alternatively, transfer it to the United States District Court for the District of Alaska, Anchorage Division.  NordAq further requests any and all further relief to which it is justly entitled.

Respectfully submitted,

By:  s/  Matthew E. Coveler
        Matthew E. Coveler
        State Bar No. 24012462
        S.D. No. 24130
Attorney-In-Charge
7660 Woodway, Suite 500
Houston, Texas 77063
Telephone:  (713) 244-0800
Facsimile:  (713) 244-0801
matthew.coveler@wtllaw.com

OF COUNSEL:

WEINSTEIN TIPPETTS & LITTLE LLP
Ben T. Zinnecker
State Bar No. 24066504
S.D. No. 1269224
ben.zinnecker@wtllaw.com

**COUNSEL FOR DEFENDANT NORDAQ ENERGY, INC.**

## CERTIFICATE OF SERVICE

This instrument was served in compliance with Rule 5 of the Federal Rules of

Civil Procedure, on June 17, 2013, upon the following counsel of record via the Court's

CM/ECF system:

Phil Snow
Blake Hamm
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 4100
Houston, Texas 77019

s/ Matthew E. Coveler
Matthew E. Coveler